## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

DESIREE M. MAYES,

     Plaintiff,

     vs.

ENPRO ASSOCIATES, LLC;
STEMCO LP;
MAT HD, LLC; and
JAMES MEELER

     Defendants.

CIV. ACTION NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Desiree M. Mayes, by and through the Undersigned

Counsel of Record, and hereby files this Complaint for Damages against Defendants

EnPro Associates, LLC, Stemco LP, MAT HD, LLC, and James Meeler, respectfully

showing the Court as follows:

## I. JURISDICTION AND VENUE

1.

Plaintiff Desiree M. Mayes commences the above-captioned case pursuant to:

(a)   42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as

amended, ("Title VII") for race discrimination and retaliation; (b) 42 U.S.C. § 1981,

the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1981 ("Section 1981") for race discrimination and retaliation; (c) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA") for interference; and (d) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia, Rome Division, ("Court") is vested with original jurisdiction over the Title VII, Section 1981, and the FMLA claims pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are located, and a substantial part of the events giving rise to the asserted claims occurred in, the Northern District of Georgia, Rome Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Rome Division.

4.

Prior to commencing the above-captioned case, Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2021-01492) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated August 16, 2021.

## II.  PARTIES

5.

Plaintiff Desiree M. Mayes ("Mayes" or "Plaintiff") is a thirty (30) year old African-American female, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

At all relevant times, Mayes was an "employee" of the Corporate Defendants within the meaning of, among other laws, Title VII, Section 1981, and/or the FMLA.

7.

Defendant EnPro Associates, LLC ("EnPro") is North Carolina industrial technology limited liability company that provides sealing technology, surface technology, and engineered materials products and services, affecting inter-State commerce through its facilities with a principle office located at 5605 Carnegie Boulevard, Charlotte, North Carolina 28209.

8.

EnPro is the parent company of Stemco LP, which operated a facility located at 113 Hemlock Street, Rome, Georgia 30161 ("Rome Facility").

9.

EnPro is an "employer" with the meaning of, among other laws, Title VII, Section 1981, and/or the FMLA, with more than fifty (50) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

EnPro may be served with process through CT Corporation System 7700 E. Arapahoe Road, Suite 200, Centennial, Colorado 80112.

11.

Defendant Stemco LP ("Stemco") is a Texas limited partnership that manufactures and distributes products for the global commercial vehicle market, affecting inter-State commerce through its facilities with a principle office located at 300 Industrial Boulevard, Longview, Texas 75606.

12.

Stemco operated a facility located at 113 Hemlock Street, Rome, Georgia 30161 ("Rome Facility").

13.

Stemco is an "employer" with the meaning of, among other laws, Title VII, Section 1981, and/or the FMLA, with more than fifty (50) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

14.

Stemco may be served with process through CT Corporation System 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

15.

Defendant MAT HD, LLC ("MAT") is an Illinois limited liability company that manufactures and distributes products for the global commercial vehicle market, affecting inter-State commerce through its facilities with a principle office located at 6700 Wildlife Way, Long Grove, Illinois 60047.

16.

MAT operates a facility located at 113 Hemlock Street, Rome, Georgia 30161 ("Rome Facility").

17.

MAT is an "employer" with the meaning of, among other laws, Title VII, Section 1981, and/or the FMLA, with more than fifty (50) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

18.

MAT may be served with process through Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

19.

Defendant James Meeler ("Meeler") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

20.

Meeler was, at all relevant times, Stemco's, EnPro's MAT's Production Supervisor at the Rome Facility, involved in the day-to-day operation of the Rome Facility and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of the Rome Facility.

21.

At all relevant times, Meeler supervised Mayes while participating in the unlawful interference, as well as discriminatory, retaliatory, and tortious conduct described herein.

22.

Meeler may be served with process at the Rome Facility located at 113 Hemlock Street, Rome, Georgia 30161.

### III.  FACTUAL ALLEGATIONS

23.

At all relevant times, Stemco manufactured and distributed products for the global commercial vehicle market from the Rome Facility.  During that time, EnPro was the parent company of Stemco LP.  On or about September 26, 2019, Stemco and EnPro "announce[d] the sale of the company's Rome, Georgia[,] brake business to MAT."

24.

Mayes, a thirty (30) year old African-American female, was formerly employed by Stemco as a Machine Operator.

25.

Prior to working for Stemco, Mayes held several professional positions including, but not limited to, Machine Operator with F&P Manufacturing.

26.

In or about June 2014, Mayes began working as a Machine Operator for Stemco at the Rome Facility.

27.

During the course of employment, Mayes worked under the supervision of Meeler (Caucasian), who was a Production Supervisor at the Rome Facility.

28.

As a Machine Operator, Mayes was responsible for completing maintenance, development, and operations tasks that promote the efficient productions at the Rome Facility, maintaining and operating equipment, staging and setting up manufacturing equipment, utilizing machinery to complete tasks, performing routine inspections of manufacturing equipment, and performing other related duties and tasks assigned by management.

29.

At all relevant times, Mayes was a member of a protected class and/or covered by Title VII and Section 1981.

30.

At all relevant times, EnPro, Stemco, and MAT were employers covered by the FMLA and Mayes was an "eligible employee" as defined under the FMLA.

31.

While employed by Stemco, MAT, and EnPro, Mayes diligently performed all tasks while meeting or exceeding all performance expectations.  For example, Mayes received rewards for producing the most parts in particular months. Similarly, Mayes received rewards for continuous improvements on machines at the Rome Facility.

32.

Although Doug Terry promoted Mayes to a training office position at the Rome Facility, when Mr. Terry left Stemco, Mayes was demoted to Machine Operator.

33.

Several African-American employees at the Rome Facility submitted, in or about May 2019, a racial discrimination complaint against Meeler.  In this regard, the complaining employees listed Mayes as a witness.  When participating in the racial discrimination complaint, Meeler called Mayes from the production floor and directed Mayes to a room, where Dana Rutland ("Rutland"), Stemco HR, was waiting.  During the interview, Rutland advised Mayes that a Stemco employee made an anonymous complaint, accusing Meeler of racial discrimination, and inquired about Mayes' thoughts.  In response, Mayes stated that she reasonably believed that the employment practices at the Rome Facility constituted unlawful employment discrimination against African-American employees.  Specifically, Mayes pointed out that African-American employees were treated significantly less-favorable than Caucasian employees, including, but not limited to, Jennifer Shontell ("Shontell"), because African-Americans were assigned harder tasks and that African-Americans were never hired or promoted into management positions.

34.

Immediately after Mayes participated in the investigation into racial discrimination against Meeler and shared observations concerning Meeler's racial discrimination, Defendants engaged, by and through Defendants' agents, representatives, and/or employees, in a retaliatory campaign against, and harassing, Mayes. Mayes met with Meeler, who stated, in tears, "I hope they do not fire me, I really need my job." Additionally, Meeler and other management would needlessly criticize Mayes' professional performance and keep a list concerning every issue discussed with Mayes—prior to the complaint, management never subjected Mayes to these adverse employment actions. Furthermore, Meeler and management subjected Mayes to write-ups for no reason.

35.

While operating a machine at the Rome Facility on or about May 28, 2019, Mayes injured her shoulder. In this regard, Meeler transported Mayes to an urgent care center. Subsequently, Mayes received medical treatment, participated in therapy, and was assigned light duty at Rome Facility. Nevertheless, while on light duty, Rod Miller ("Miller") (Stemco Supervisor) stated that Mayes faked the injury because Mayes did not want to operate her machine. Moreover, Defendants constantly complained, asked Mayes how much longer she would be on light duty,

and inquired about how many medical appoints Mayes' needed for the trapezoid injury.

36.

Despite Mayes' workplace shoulder injury, Defendants never provided Mayes, who accrued substantial leave, with an FMLA rights-and-responsibilities notice (or any other information or policies concerning leave/attendance).

37.

Mayes repeatedly complained to Charles Johnson ("Johnson"), about the racial discrimination, harassment, retaliation, and other issues Mayes experienced at the Rome Facility.  Johnson observed and recognized the racial discrimination, harassment, retaliation, and other issues Mayes experienced at the Rome Facility.  However, Johnson took no remedial action or addressed Mayes complaints or concerns.

38.

On September 26, 2019, Stemco and EnPro announced the sale of the Rome Facility to MAT.

39.

More egregiously, following Mayes' participation in the investigation concerning Meeler's racial discriminaton at the Rome Facility, Defendants

terminated Mayes' employment.  On September 26, 2019, Rutland advised Mayes that her employment at the Rome Facility was terminated.  Specifically, seven (7) African-American employees, including Mayes, and three (3) Caucasian employees were advised that their employment was terminated due to a *purported* "lack of work." The three primary witnesses in the investigation of the racial discrimination complaint against Meeler, including, but not limited to, Mayes, had their employment terminated.

40.

Prior to the termination of employment, Mayes had not received any disciplinary actions while employed at the Rome Facility.

41.

Although Mayes diligently performed, Defendants treated, by and through Defendant's agents, representatives, and/or employees, Mayes unequivocally and significantly less favorably than non-African-American co-workers, including, but not limited to, Erica Forsyth ("Forsyth"), who were in similar and comparable positions at Rome Facility, did not participate in the investigation into Meeler's racial discrimination, and whose employment was not terminated following the sale of the Rome Facility to MAT.  For example, when Mayes suffered pregnancy complications and requested a reasonable accommodation, Defendants continued to

assign heavy lifting tasks, resulting in a premature birth and hernia.  Conversely, when Forsyth was pregnant, Defendants afforded Forsyth a reasonable accommodation, removed Forsyth from the production floor, and assigned Forsyth light duty office work.

42.

During the course of Mayes' employment at the Rome Facility, African-Americans employees in management or supervisory positions were always the first employees terminated whenever there was a reduction-in-force.

43.

Defendants terminated Maye's employment and punished Mayes, who participated in the investigation into Meeler's racial discrimination at the Rome Facility.

44.

As a result of unfair, discriminatory, and retaliatory treatment, Mayes has suffered the indignity of race discrimination, the invasion of right to be free from discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which Mayes is entitled to recover.

## IV.  CLAIMS FOR RELIEF

### COUNTS I & II
### RACE DISCRIMINATION
### IN VIOLATION OF TITLE VII AND SECTION 1981
**(Against Defendants Stemco, EnPro, and MAT)**

45.

Title VII and Section 1981 prohibit employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/or national origin.

46.

As an African-American, Mayes is a member of a protected class under Title VII and Section 1981.

47.

At all relevant times, the relationship between Mayes, Stemco, EnPro, and MAT was a relationship of "employee" to "employer" under Title VII and Section 1981, such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse actions directed to the employee by the employer.

48.

At all times relevant to this action, Stemco, EnPro, and MAT acted by and through agents and employees, including, but no limited to, Meeler and Miller, each of whom acted in the course and scope of their employment with and for Stemco, EnPro, and MAT.

49.

Despite Mayes' diligent work performance, Defendants intentionally discriminated against Mays on the basis of race by, among other things, subjecting Mayes to unfair treatment compared to similarly-situated non-African-American employees (including but not limited to Forsyth who did not participate in the investigation of the racial discrimination complaint against Meeler), subjecting Mayes to needless professional criticism and wrote-up Mayes without justification, and terminating employment, as well as other unlawful actions based solely upon race.

50.

Nevertheless, Mayes was treated less-favorably than similarly-situated non-African-American Stemco, EnPro, and MAT employees, including, but not limited to, Forsyth, in violation of Title VII and Section 1981.

51.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Mayes' employment.

52.

Defendants' actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

53.

Defendants have willfully and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

54.

As a direct and proximate result of Defendants' unlawful employment practices, which were intended to cause Mayes harm and/or were committed with reckless disregard of the harm caused to Mayes, in derogation of Maye's Federally-protected rights, Mayes has suffered and continues to suffer the indignity of race and national origin discrimination, the invasion of his right to be free from race and national origin discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

55.

Defendants intentional and illegal conduct entitles Mayes to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

56.

Defendants' actions with regard to Mayes demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Mayes to an aware of punitive damages to deter, punish, and penalize Bass Pro Shops for and from similar future conduct.

**COUNT III**
**INTERFEERNCE**
**IN VIOLATION OF THE FMLA**
**(Against Defendants Stemco, EnPro, and MAT)**

57.

The FMLA prohibits employers from interfering with employees' exercises of rights under FMLA and provides that, when an employer acquires knowledge than an employee may qualify for FMLA leave, the employer must evaluate whether the employee qualifies for FMLA protection, provide notice to the employee of the eligibility for and rights under the FMLA, as well as advise the employee of the rights-and-responsibilities under the FMLA.

58.

Because Mayes had worked more than 1,250 hours during the 12 months preceding the Mayes' shoulder injury that rendered Mayes unable to perform the functions of a Machine Operator, Mayes was entitled to take leave pursuant to the FMLA.

59.

At all times relevant to this action, the relationship between Mayes, EnPro, Stemco, and MAT was an employer-employee relationship within the meaning of the FMLA, such that a cause of action exists where EnPro, Stemco, and MAT employers as defined by the FMLA, Mayes was an eligible employee as defined by the FMLA, and Defendants interfered with Mayes' entitlement to take leave pursuant to the FMLA.

60.

At all times relevant to this action, EnPro, Stemco, and MAT acted by and through its agents and employees, including, but not limited to, Miller and Meeler, each of whom acted in the course and scope of their employment with and for EnPro, Stemco, and MAT.

61.

Mayes had an "entitlement to leave" as defined by the FMLA, 29 U.S.C. § 2612(a)(1) when Mayes suffered a serious shoulder injury that rendered her unable to perform the functions of a Machine Operator.

62.

Mayes satisfied all FMLA prerequisites.

63.

Defendants violated the FMLA by interfering with Mayes rights when Defendants, following the serious shoulder injury suffered at the Rome Facility, failed to provide Mayes with notice of Mayes' rights-and-responsibilities while on FMLA leave.

64.

Due to Defendants' interference, Mayes was unable to exercise Mayes' full rights under FMLA in a meaningful way.

65.

As a direct and proximate result of the above-described actions, Defendants have deprived Mayes of an employment benefit.

66.

Additionally, Mayes has suffered and continues to suffer loss income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits, as well as humiliation, emotional pain, mental distress, inconveniences, and mental anguish.

67.

Defendants' interferences were willful, deliberate, and intended to cause Mayes harm and/or were committed with reckless disregard of harm caused to Mayes, and in derogation of Mayes' Federally-protected rights.

68.

As a result, Mayes is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, including, but not limited to, back pay, front pay or reinstatements, attorney's fees, and costs of litigation.

69.

Mayes is also entitled to liquidated damages for Defendants' violation of Mayes' rights under the FMLA because Defendants' actions were willful violations of the FMLA.

## COUNTS IV, V, AND VI
## RETALIATION
## IN VIOLATION OF THE FMLA, TITLE VII, AND SECTION 1981
### (Against Defendants Stemco, EnPro, and MAT)

70.

The FMLA, Title VII, and Section 1981 prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights, under the FMLA, Title VII, and Section 1981.

71.

At all relevant times, Mayes was an eligible employee who was entitled to leave pursuant to the FMLA because Mayes suffered a serious shoulder injury while working at the Rome Facility that rendered Mayes unable to perform as a Machine Operator.

72.

As thirty (30) year old African-American female, Mayes is a member of protected classes under Title VII and Section 1981.

73.

During the relevant period, the relationship between Mayes, Stemco, EnPro, and MAT was an employer-employee relationship within the meaning of the FMLA, Title VII, and Section 1981, such that a cause of action exists where retaliation on

the basis of opposing discrimination, reporting discrimination, and/or exercising protected Federal rights are alleged to be the causative agent of adverse employment action(s) directed to Mayes by Defendants.

74.

During the course of Mayes' employment, Stemco, EnPro, and MAT, including Stemco's, EnPro's, and MAT's agents and employees, unlawfully and knowingly discriminated against and harassed Mayes based upon, among other things, race and Mayes' participation in the investigation related to the racial discrimination complaint against Meeler, in violation of, *inter alia*, Title VII and Section 1981.

75.

During the course of Mayes' employment, Stemco, EnPro, and MAT, including Stemco's, EnPro's, and MAT's agents and employees, unlawfully and knowingly interfered with Mayes' entitlement to leave pursuant to the FMLA.

76.

Mayes complained to Stemco's, EnPro's, and MAT's employees, including, but not limited to, Johnson, about unlawful employment practices based upon race, as well as the interference with FMLA leave.

77.

Following Mayes complaints and participation in the investigation into the racial discrimination complaint against Meeler, Defendants took additional adverse employment actions against Mayes, including, but not limited to, interfering with Mayes' ability to take FMLA, negative comments, needless criticism, warrantless write-ups, as well as the termination of employment based solely upon complaints of interference and race discrimination in violation of, *inter alia*, the FMLA, Title VII, and Section 1981.

78.

Defendants' adverse employment actions against Mayes constitute unlawful retaliation against Mayes in violation of, *inter alia*, the FMLA, Title VII, and Section 1981.

79.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Mayes harm and/or were committed with reckless and wanton disregard of the harm causes to Mayes in derogation of Maye's Federally-protected rights.

80.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

81.

The retaliation to which Mayes was subjected by Defendants entitle Mayes to all appropriate relief afforded under the law.

82.

As a result of Defendants' intentional and unlawful actions, Mayes has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

83.

Defendants' actions with respect to Mayes have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Mayes is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT VII:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Stemco, EnPro, MAT and Meeler)

84.

Defendants' statements, conduct, and behavior, by and through Defendants' agents, representatives, and/or employees, towards Mayes were intentional and reckless, extreme and outrageous, causing Mayes severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

85.

Defendants' statements, conduct, and behavior, by and through Defendants' agents, representatives, and/or employees, towards Mayes demonstrate, among other things, a "retaliatory animus."

86.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Maye's and Maye's income and/or livelihood.

87.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Mayes, Defendants knew that Mayes was dependent upon the income received from Stemco, EnPro, and MAT.

88.

Defendants repeatedly assigned heavy lifting tasks resulting in a premature birth and hernia, subjected Mayes to public ridicule based upon a workplace injury suffered at the Rome Facility, interfered with Mayes' ability to take medical leave and obtain treatments due to the serious workplace injury, required Mayes to participate in the investigation into the racial complaint against Meeler that ultimate lead to the termination of Mayes' employment, and subjected Mayes to other unlawful and tortious conduct.

89.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Mayes.

90.

As a result of Defendants' conduct, Mayes has and will continue to suffer severe emotional distress and other damages for which Mayes is entitled to recover.

## COUNT VIII
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendants Stemco, EnPro, MAT)

91.

As a result of the actions taken by Defendants, Mayes is suffered, among other things, discrimination based race, interference with ability to take FMLA leave, severe emotional distress.

92.

Stemco, EnPro, and MAT owed Mayes a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

93.

By negligently retaining and supervising its employees, including, but not limited to Meeler and Miller, Stemco, EnPro, and MAT breached its duty to hire, retain, and supervise employees who would lawfully behave.

94.

Stemco, EnPro, and MAT knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but no limited to, Meeler and Miller, to engage in unlawful conduct against Mayes.

95.

By failing to engage in any corrective or remedial action, Stemco, EnPro, and MAT ratified, condoned, and/or adopted its employees' unlawful conduct.

96.

As a direct and proximate result of Stemco, EnPro, and MAT negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Miller and Meeler, Mayes suffered damages.

97.

Stemco's, EnPro's, and MAT's negligent conduct entitles Mayes to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, Title VII, Section 1981, the FMLA, and the laws of the State of Georgia were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of Title VII, Section 1981, the FMLA, and the laws of the State of Georgia;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.


*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 9th day of November, 2021.

MOLDEN & ASSOCIATES

_/s/ Regina S. Molden_
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Desiree M. Mayes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| DESIREE M. MAYES, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| ENPRO ASSOCIATES, LLC;<br>STEMCO LP;<br>MAT HD, LLC; and<br>JAMES MEELER | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing First Amended Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 9th day of November, 2021.

MOLDEN & ASSOCIATES

T. ORLANDO PEARSON
Georgia Bar No. 180406